|  |  |
|---|---|
| LESLIE DAVIS,<br><br>　　　　　　PLAINTIFF,<br><br>V.<br><br>HENNEPIN COUNTY, a political subdivision;<br>AND COMMISSIONER JOHNSON, COMMISSIONER<br>OPAT, COMMISSIONER STENGLEIN,<br>COMMISSIONER DORFMAN, COMMISSIONER<br>KOBLICK, COMMISSIONER MCLAUGHLIN,<br>SECURITY OFFICER ROBERT ESTES, SECURITY<br>OFFICER JAMES HENDERSON, SECURITY<br>SUPERVISOR CHRISTOPHER MARA, SECURITY<br>SUPERVISOR THOMAS BILLINGS, SECURITY<br>OFFICER SCOTT ELMORE, SECURITY<br>SUPERVISOR BILL COLUMBEIN, AND ALL<br>OTHERS UNKNOWN, all in their personal and<br>professional capacities,<br><br>　　　　　　DEFENDANTS. | CIVIL NO. 08-5320 (JNE/AJB)<br><br><br><br>**REPORT & RECOMMENDATION** |

Leslie Davis, P.O. Box 11688, 622 Lowry Avenue North, Minneapolis MN 55411 (pro se);

Michael O. Freeman, Hennepin County Attorney, and Jean E. Burdorf, Assistant County Attorney, Hennepin County Attorney's Office, 300 South 6th Street, 2000A Government Center, Minneapolis MN 55487 (for Defendants).

## I.　　INTRODUCTION

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on

Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 37]. This Court heard

the Defendants' motion pursuant to United States District Court Judge Joan N. Ericksen's Order

of Reference [Docket No. 40]. 28 U.S.C. § 636(b)(1)(A)-(C); D. Minn. LR 72.1. A hearing was

held on the motion on December 14, 2009. Plaintiff Leslie Davis appeared and is acting pro se in this matter. Assistant Hennepin County Attorney Jean E. Burdorf appeared on behalf of Defendants.

For the reasons set forth below, this Court **RECOMMENDS** Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 37] be **GRANTED IN PART**. This Court recommends that, to the extent that claims 1 through 22 of Plaintiff's Second Amended Complaint state federal claims, claims 1 through 22 be **DISMISSED WITHOUT PREJUDICE**. This Court further recommends that Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 37] be **DENIED IN PART**; to the extent that claims 1 through 22 of Plaintiff's Second Amended Complaint state claims premised upon state law, this Court recommends that claims 1 through 22 be **REMANDED** to the Hennepin County District Court.

## II.     BACKGROUND

### 1.  Allegations in the Second Amended Complaint

Plaintiff alleges in his Second Amended Complaint as follows: In August 2006, Plaintiff was founder and president of the Earth Protector environmental group, and a candidate for Minnesota Governor. (Second Am. Compl. ¶ 5, Sept. 30, 2009.) In early August 2006, the Hennepin County Board of Commissioners announced that on August 22, 2006, there would a public hearing on a proposal for a new baseball stadium for the Minnesota Twins. (*Id.* at ¶ 6.) Prior to the hearing, Plaintiff registered to address the Board (or testify) at the hearing. (*Id.* at ¶¶ 7-8.)

On August 22, 2006, Plaintiff arrived at the hearing at the Hennepin County Government Center. (*Id.* at ¶ 10.) Plaintiff checked in at a table staffed by Hennepin County personnel and was told that he was listed as the eighth pre-registered person to testify. (*Id.* at ¶¶ 10-11.)

Commissioner Johnson called the meeting to order. After eleven speakers had testified, Plaintiff asked a staff member when he would be called to testify. (*Id.* at ¶ 13.) The staff member checked with Board Secretary Kay Mitchell and then told Plaintiff that Commissioner Johnson was not following the sequence on the pre-registration list and that they did not know when, or if, Plaintiff would be able to testify. (*Id.* at ¶ 14.)

After two more people testified, Plaintiff went to the podium. (*Id.* at ¶ 15.) Addressing the Board, Plaintiff repeatedly asked when he would be given a chance to speak. (*Id.* at ¶ 16.) Commissioner Johnson told Plaintiff that he would be allowed to speak but did not state when that would be. (*Id.* at ¶ 16.) The transcript provided by Plaintiff describes the exchange between Commissioner Johnson and Plaintiff.[1]

> DEFENDANT COMMISSIONER JOHNSON [DEFENDANT]: Caroline Lawrence.
>
> PLAINTIFF: I'm next. My name's Leslie Davis.
>
> DEFENDANT: No you're not next.
>
> PLAINTIFF: I am, I'm number 8 on that list—you're already in to about 12 or 14 people.
>
> DEFENDANT: I'm calling for…
>
> [inaudible]
>
> PLAINTIFF: Now you said at the beginning that you were going to be fair and ethical. Now we went in order I called in and I'm number eight on that list and I was told that we're taking them in order so now I'm going to give my testimony.
>
> DEFENDANT: Mr. Davis you know the procedure we're going for and against, we're going for and against, we're going for and

---

[1] This Court has made some minor non-substantive alterations to the transcript provided by Plaintiff. This Court did not cross check the transcription provided by Plaintiff with the DVD recording provided by Plaintiff, but having reviewed the recordings provided by Plaintiff, this Court has noted some actions that are not captured in Plaintiff's transcript that are evident on the recording.

against. You're not number eight on this list Mr. Davis. You have testified here many times you know that I am fair you know that you will get your opportunity to speak.

PLAINTIFF: I'm gonna get my opportunity now to speak. You said you were going to be fair and equitable but you're back to your old despicable behavior Mr. Johnson and it's my turn to speak.

DEFENDANT: You will get your opportunity to speak when I call on you—Mr. Davis, Mr. Davis, Mr. Davis, Mr. Davis, Mr. Davis.

PLAINTIFF: I wanna know when is my turn to speak? [Caroline Lawrence pats Davis on the back.] Just a second.

DEFENDANT: It's Caroline Lawrence's turn to speak.

[Inaudible.]

PLAINTIFF: When is it my turn to speak? [To Caroline Lawrence] Don't put your hands on me.

DEFENDANT: Mr. Davis, we are attempting to go as best we can. You will definitely be speaking soon.

PLAINTIFF: When?

DEFENDANT: Please let Carol go [(i.e. testify)].

PLAINTIFF: Just a minute now I'm taking care of some democratic business. Don't you believe in democracy? I wanna know when I get to speak. When do I get to speak? I wanna know when I get to speak. I'm number eight on the list.

DEFENDANT: I think, I think, I think the sooner you step down the sooner you may be given the opportunity to speak.

(Second Am. Compl. Ex. C.) Security Officer Estes "appear[ed]" at Plaintiff's right and pointed away from podium.

DEFENDANT: The longer you stand there the longer you will delay your opportunity . . . and everyone else's. I would suggest you step down Mr. Davis. You will get to speak. You will get to speak.

PLAINTIFF: Are you going to have a democratic process Miss Dorfman or are you going to allow him to do this? Are you going to allow him to walk over me? Is this the way it's going to operate in Hennepin County Mr. Opat?

(Second Am. Compl. Ex. C.) Security Officer Estes moved to Plaintiff's left and Security Officer Henderson "appear[ed]" at Plaintiff's right.

DEFENDANT: We're participating in a democratic process.

PLAINTIFF: It's not a democratic process. I'm number eight on the list.

DEFENDANT: You know you will have the opportunity to speak.

PLAINTIFF: When?

DEFENDANT: I've never denied you the opportunity to speak.

PLAINTIFF: I'm here to testify and my turn has already passed.

DEFENDANT: I've never denied you the opportunity to speak and [you have] appeared before this board more often than anyone else.

PLAINTIFF: (Showing his election sign) I'm a candidate for governor of Minnesota and we can start by dumping Stenglein because he's the problem.

DEFENDANT: Mr. Davis, Mr. Davis I think we know why you're here.

PLAINTIFF: Just a minute now.

DEFENDANT: Mr. Davis, Mr. Davis we'd like to, I think we'd like to hear from Miss Lawrence.

PLAINTIFF: It's my turn.

SECURITY OFFICER: (Inaudible.)

PLAINTIFF: (To a security officer) He's not going to give me my turn.

SECURITY OFFICER: Yes he will.

> PLAINTIFF: I'm number eight on the list. I called . . .
>
> SECURITY OFFICER: Yes he will.
>
> DEFENDANT: I think we've given you ample opportunity.
>
> PLAINTIFF: You're cheating. You're up to your old despicable ways. And as you board members sit there.

(Second Am. Compl. Ex. C.) Security Supervisors Christopher Mara and Thomas Billings entered the hearing room and asked Plaintiff for his sign,[2] which Plaintiff gave to them. (*Id.*) Moments later "security supervisor" asked Plaintiff to go outside of the hearing room to talk. (*Id.*) Plaintiff told the security officer, "We're not gonna talk right here. I'm here to testify." (*Id.*) Plaintiff alleges that while he was at the podium and "without provocation," Commissioner Johnson "nodd[ed] to other Defendants" and at that point Plaintiff was "accosted" by two Defendants who forced Plaintiff to the floor. (Second Am. Compl. ¶ 17, Sept. 30, 2009.) Plaintiff was subsequently carried from the hearing room and arrested by Security Officers Estes, Henderson, and Scott Elmore as well as Security Supervisors Billings, Mara, and Bill Collumbien. (*Id.* at Ex. C.) A third Defendant "bang[ed]" Plaintiff into a door and helped carry Plaintiff into a hallway. (*Id.* at ¶ 17.) In the hallway, a fourth Defendant helped carry and push Plaintiff more than sixty feet to an elevator where "two more" Defendants assisted in handcuffing Plaintiff. (*Id.* at ¶ 17.) Plaintiff alleges that throughout this ordeal his arms were twisted, which aggravated an existing shoulder injury. (*Id.* at ¶ 17.)

Plaintiff was subsequently arrested and charged with disorderly conduct. (*Id.* at ¶ 18.) Plaintiff was released later that same night, and one week later the charges against Plaintiff were dismissed. (*Id.* at ¶¶ 20, 22.)

---

[2] While Plaintiff spoke he was holding a sign that was attached to a stick.

Plaintiff claims that this incident embarrassed him because it occurred in front of attendees at the hearing, cable television viewers, news reporters, and individuals who viewed the coverage of the incident on two television stations. (*Id.* at ¶ 17.) Plaintiff contends that the media coverage of this incident had a negative impact on his reputation and his campaign for governor. (*Id.* at ¶ 26.)

In addition to the aforementioned allegations, Plaintiff attached and references in his Second Amended Complaint a copy of *Vergara v. City of Waukegan*, 590 F. Supp.2d 1024 (N.D. Ill. 2008), a DVD recording of the incident, a transcript of the incident, and a DVD of two news broadcasts, the hearing sign-in sheet, a list of the speakers in the order in which they were allowed, and the Hennepin County Sheriff's Office's initial complaint report.

## 2. Procedural Background

The instant motion to dismiss is the third such motion to dismiss brought by Defendants. Plaintiff initially commenced this action in Minnesota state court. Defendants removed the action to federal court [Docket No. 1] and filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [Docket No. 5.] On February 2, 2009, this Court issued an Order, granting Plaintiff leave to file an amended complaint. [Docket No. 19.] The Court's Order expressly mandated certain minimum requirements for Plaintiff's amended complaint.

Plaintiff filed an Amended Complaint on April 1, 2009. [Docket No. 23.] On April 21, 2009, Defendants filed Defendants' Objection to Amended Complaint [Docket No. 26] and a Motion to Dismiss Amended Complaint [Docket No. 24]. Defendants' objected to the fact that Plaintiff failed to comply with all of the express pleading requirements provided in the February 2, 2009 Order. In response, Plaintiff filed a Motion to Strike the offending portions and on May 19, 2009, this Court granted Plaintiff's motion. [Docket No. 29.]

Thereafter, this Court adjudicated Defendants' Motion to Dismiss Plaintiff's Amended Complaint. This Court noted that problems remained with Plaintiff's Amended Complaint, including:

> Plaintiff's Amended Complaint violates the pleading requirement that "[t]he substantive factual allegations of the Amended Complaint must describe what, specifically, each individual named Defendant allegedly did (or failed to do) that purportedly entitled [him] to legal recourse against that Defendant."
>
> . . .
>
> Plaintiff's Amended Complaint also violates the court-ordered pleading requirement that his "[i]f Plaintiff [sought] relief for violations of his federal constitutional rights, his Amended Complaint must clearly identify the specific constitutional basis for each claim against each named Defendant (i.e., Plaintiff must describe (a) what each individual Defendant allegedly did or failed to do, and (b) each specific constitutional right allegedly violated by that Defendant's alleged acts or omissions."

[Docket No. 35.] Despite these deficiencies, this Court granted Plaintiff leave to file a Second Amended Complaint, to permit Plaintiff the opportunity to correct the pleading deficiencies noted above. [Docket No. 35.]

Plaintiff filed a Second Amended Complaint on September 30, 2009 [Docket No. 36]. Plaintiff alleges the facts presented above and 22 causes of action, which are summarized as follows:

| Claim Number | Title | Defendant |
|---|---|---|
| 1 | Violation of Protected Free Speech | Commissioner Johnson |
| 2 | Violation of Unreasonable Search and Seizure and Due Process | Commissioner Johnson |
| 3 | Infliction of Cruel and Unusual Punishment | Commissioner Johnson |
| 4 | False Arrest | Commissioner Johnson |
| 5 | False Imprisonment | Commissioner Johnson |
| 6 | Defamation and Slander | Commissioner Johnson |
| 7 | Violation of Minnesota Open Meeting Law | Commissioner Johnson |
| 8 | Neglect to Prevent | Commissioner Dorfman |
| 9 | Neglect to Prevent | Commissioner Opat |
| 10 | Neglect to Prevent | Commissioner Koblick |
| 11 | Neglect to Prevent-Slander | Commissioner Stenglein |
| 12 | Neglect to Prevent | Commissioner McLaughlin |
| 13 | Violation of Protected Free Speech | Security Officer Thomas Billings |
| 14 | False Arrest | Security Officer Thomas Billings |
| 15 | Violation of Protected Free Speech | Security Officer Robert Estes |
| 16 | False Arrest | Security Officer Robert Estes |
| 17 | Infliction of Cruel and Unusual Punishment | Security Officer Robert Elmore |
| 18 | Infliction of Cruel and Unusual Punishment | Security Officer Bill Collumbein |
| 19 | False Arrest | Security Officer Thomas Billings |
| 20 | Violation of Protected Free Speech | Security Officer James Henderson |
| 21 | False Arrest | Security Officer James Henderson |
| 22 | Infliction of Cruel and Unusual Punishment | Security Officer Christopher Mara |

Plaintiff's claims are against Defendants "all in their personal and professional capacities." (Second Am. Compl. ¶¶ 3-4.) The underlying legal authority as to each cause of action will be discussed later.

Defendants filed a motion to dismiss the Second Amended Complaint on October 14, 2009. [Docket No. 37.] Plaintiff filed Response to Defendant's Motion to Dismiss on November 24, 2009. [Docket No. 43.] Defendants then filed a Reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss on December 1, 2009. [Docket No. 44.]

## II.    DISCUSSION

### 1.  Standard of Review

A complaint should be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint that is challenged on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). The court must analyze whether the plaintiff has put forth factual allegations that "raise the right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959. While federal courts must "view *pro se* pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

As a general rule, because a motion to dismiss tests the adequacy of the pleadings, no materials beyond the pleadings can be considered in ruling upon the motion to dismiss without altering the motion to one for summary judgment under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(d). But, there are exceptions to this rule. When deciding a motion to dismiss the court may consider, in addition to the pleadings, "materials embraced by the pleadings and materials that are a part of

the public record." *See In re K-tel Int'l, Inc. Sec. Litig.*, 300 F. 3d 1881, 889 (8th Cir. 2002) (quotation omitted); *see also Piper Jaffray v. Nat'l Union Fire Insur. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (citing *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1198 (D. Minn. 1996)). Materials which are necessarily embraced by pleadings may include copies of underlying pleadings and documents incorporated by reference. *Piper Jaffray*, 967 F. Supp. At 1148. In addition, materials which are public record may be considered in deciding a motion to dismiss. *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

Plaintiff filed simultaneously with Second Amended Complaint and references within his Second Amended Complaint a copy of *Vergara v. City of Waukegan*, a DVD recording of the incident, a transcript of the DVD, and DVD of two news broadcasts, the hearing sign-in sheet, a list of the speakers in the order in which they were allowed, and the Hennepin County Sheriff's initial complaint report. This Court concludes that these attachments are embraced by the pleadings. Additionally, because this hearing was public, and copies of the recording are available to the public, the official recording is part of the public record. For these reasons this Court concludes that consideration of these materials does not alter this motion to dismiss into one for summary judgment.

In addition to the standard of review set forth above, Fed. R. Civ. P. 41(b) provides that "[i]f the plaintiff fails . . . to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." The Eighth Circuit Court of Appeals has affirmed dismissal of a complaint that failed to delineate the defendants' respective acts and liability, and the plaintiff failed to comply with district court's repeated instructions to do so. *Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir. 2005). In the present case, Plaintiff was given specific instructions for the form and content of his Second Amended Complaint, and Plaintiff was warned that failure to comply with

these instructions could result in dismissal. [Docket No. 35.] Thus, in approaching the present motion, this Court will also consider Plaintiff's Second Amended Complaint in light of this Court's previous instructions.

## 2. Preliminary Considerations

### a. Interpreting Plaintiff's Claims

Plaintiff's Second Amended Complaint asserts that this Court has jurisdiction pursuant to "the Constitution of the United States, and in particular, under the First, Fourth, Fifth, Sixth, Fourteenth, and Fifteenth Amendments thereto, and under the laws of the United States, and, in particular, title 42, USC, Sections 1981, 1982, 1983, 1988, 1989 and 1990, and pendant Minnesota law."[3] (Second Am. Compl. ¶ 1, Sept. 30, 2009.) In addition, Plaintiff has "Introduction" and "Argument" sections, in his Second Amended Complaint, in which he cites federal case law in support of his claims. Plaintiff cites a legal basis for each cause of action, as follows:

---

[3] Plaintiff also states that this Court "has jurisdiction stemming directly from the constitution that is *self-enacting*." (Second Am. Compl. ¶ 1, Sept. 30, 2009.)

| Claims Number | Title | Legal Basis |
|---|---|---|
| 1, 13, 15, 20 | Violation of Protected Free Speech | Minn. Const. Art. 1 § 2; 42 U.S.C. §§ 1981, 1983; Minn. Stat. § 358.05; *Connick v. Myers*, 461 U.S. 138, 145 (1983); *Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997).[4] |
| 2 | Violation of Unreasonable Search and Seizure and Due Process | U.S. Const. amend. IV, XIV; Minn. Const. Art. 1 §§ 7, 10; 42 U.S.C. §§ 1981, 1983; Minn. Stat. § 358.05. |
| 3, 17, 18, 22 | Infliction of Cruel and Unusual Punishment | U.S. Const. amend. VIII; Minn. Const. Art. 1 § 5; 42 U.S.C. §§ 1981, 1983; Minn. Stat. § 358.05. |
| 4, 14, 16, 19, 21 | False Arrest | U.S. Const. amend. XIV; Minn. Const. Art. 1 §§ 2, 7; 42 U.S.C. §§ 1981, 1983; Minn. Stat. § 358.05. |
| 5 | False Imprisonment | U.S. Const. amend. XIV; Minn. Const. Art. 1 §§ 2, 7; 42 U.S.C. §§ 1981, 1983; Minn. Stat. § 358.05. |
| 6 | Defamation and Slander | 42 U.S.C. §§ 1981, 1983; Minn. Stat. §§ 609.765, 358.05. |
| 7 | Violation of Minnesota Open Meeting Law | 42 U.S.C. §§ 1981, 1983; Minn. Stat. §§ 13D, 358.05. |
| 8, 9, 10, 12 | Neglect to Prevent | 42 U.S.C. § 1986; Minn. Stat. § 358.05. |
| 11 | Neglect to Prevent-Slander | 42 U.S.C. § 1986; Minn. Stat. §§ 609.765, 358.05. |

Plaintiff was directed to "clearly identify the legal basis for that cause of action—i.e., the specific statute, constitutional principle, common law doctrine or theory, etc. on which the cause of action is based." (Order 5, Aug. 24, 2009.) The claim charts above summarize Plaintiff's

---

[4] *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684 (1983), and *Cabrol v. Town of Youngsville*, 106 F.3d 101 (5th Cir. 1997), both concern individuals' rights under the First Amendment of the United States.

causes of action, but the charts should not be read to suggest that Plaintiff complied with this Court's order. For example, for Plaintiff's claim entitled "Violation of Unreasonable Search and Seizure and Due Process," Plaintiff states as follows:

> Defendant Commissioner Johnson violated Plaintiff's person protected from unreasonable search and seizure by the Fourth and Fourteenth Amendment, by under the color of law ordering the removal of the Plaintiff from the public hearing and causing subsequent arrest of the Plaintiff for invalid reasons.
>
> Thereby Defendant violated Article One Sections Seven and Ten of the Minnesota Constitution, M.S. Sec. 358.05 and USC 42 Chap 21 Subchapter 1 Sections 1981, 1983; complaint authorized under USC 42 Chap 21 Subchapter 1 Section 1988, and Article One Section Eight of the Minnesota Constitution and M.S. Sec. 609.43 and M.S. Sec. 466.02.

(Second Am. Compl. ¶¶ 40-41.) These paragraphs raise some questions. Is Plaintiff asserting a violation of Minnesota's Constitution as the basis of his claim? Is Plaintiff asserting a violation of the federal constitution pursuant to section 1983? Is "Article One Sections Seven and Ten of the Minnesota Constitution, [and] M.S. Sec. 358.05" the law under the color of which Defendant acted? *See* 42 U.S.C. § 1983. Or is Plaintiff asserting state and federal claims in tandem? The majority of Plaintiff's claims present this dilemma of interpretation.

For the reasons set forth below, to the extent that Plaintiff asserts claims under 42 U.S.C. §§ 1981, 1983, or 1986, this Court concludes that Plaintiff is asserting federal claims. To the extent that Plaintiff alleges violations of Minnesota's Constitution or state law, this Court concludes Plaintiff is asserting separate state claims. Thus, because Plaintiff cites federal and state law as the basis of each claim, this Court concludes that Plaintiff is actually asserting 44 causes of action in his complaint.

### b. *28 U.S.C. § 1981*

Plaintiff repeatedly asserts 42 U.S.C. § 1981 as the basis for his claims. (Second Am. Compl. Claims 1-7, 13-21, 22.) Section 1981 provides that all persons within the jurisdiction of the United States shall have equal rights under the law. 42 U.S.C. § 1981(a). Section 1981 only applies to racial discrimination, which Plaintiff has not alleged.[5] *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Therefore, to the extent that Plaintiff relies upon 42 U.S.C. § 1981, Plaintiff has not asserted a claim upon which relief can be granted.

### b. *28 U.S.C. § 1983*

Plaintiff repeatedly states that Defendants "violated . . . USC 42 Chap 21 Subchapter 1 Section[] . . . 1983." (Second Am. Compl. ¶ 41.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful . . . ." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119

---

[5] This is neither a novel concept nor an obscure holding. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987) ("concluding that[, in enacting section 1981,] Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"); *see also Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2nd Cir. 1993); *Pryor v. National Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3rd Cir. 2002); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994); *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989); *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004). Pro se litigants must comply with court rules. *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). Federal Rules of Civil Procedure 11(b)(2) states that "[b]y presenting to the court a pleading . . . an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims . . . and other legal contentions are warranted by existing law . . . ." This rule also permits this court to sanction any party that violates this rule. Fed. R. Civ. P. 11(c)(1).

S. Ct. 977, 985 (1999) (quotation omitted). "Section 1983 affords a remedy for violations of rights secured by federal statutes and the federal constitution. It does not provide a remedy for any other rights violation." *Thomsen v. Ross*, 368 F. Supp.2d 961, 975 (D. Minn. 2005) (citing *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S. Ct. 2502, 2504 (1980)); *see also Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) (stating that "[s]ection 1983 guards and vindicates federal rights alone," which do not include violations of state laws).

### c. 28 U.S.C. § 1986

Plaintiff's neglect to prevent claims are premised upon 42 U.S.C. § 1986.[6] (Second Am. Compl. Claims 8-12.) Section 1986 states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . .

42 U.S.C.A. § 1986. As the quoted section above makes clear, "[a] section 1986 claim must be predicated upon a valid section 1985 claim." *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004). Section 1985 contains three subsections that outline three offenses: preventing a public officer from performing his or her duties, interfering with court proceedings, and depriving persons of rights or privileges either "on the highway or on the premises of another." 42 U.S.C. § 1985.

---

[6] Plaintiff claims that Defendants Dorfman, Opat, Koblick, Stenglein and McLaughlin "knew of the conspiracy to deprive Plaintiff of his civil rights" and "neglected or refused to prevent" the wrong or "continuation of the wrong", and that Defendants "witnessed" Plaintiff's forcible removal from the hearing and "failed to come to Plaintiff's aid" or respond to Plaintiff's "plea for help." (Second Am. Compl. Claims 8-12.) Plaintiff also asserts a "Neglect to Prevent-Slander" claim against Defendant Commissioner Stenglein. (*Id.* at Claim 11.) In the slander portion of the claim, Plaintiff alleges that Defendant Stenglein slandered Plaintiff by saying "that's his behavior" in response to Defendant Koblick statement "I think this is ridiculous." In addition to citing 42 U.S.C. § 1986, Plaintiff contends that Defendants violated Minn. Stat. §§ 609.765 and 358.05.

Plaintiff's Second Amended Complaint is deficient because it fails to assert facts to support a claim under section 1985. Plaintiff does little more than use the word "conspiracy" and relies on the denial of his turn to speak eighth as the basis for his claims. And the only conceivably applicable subsection, 42 U.S.C. § 1985(3), requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971). Plaintiff has not alleged any racial or class based animus. Thus, for these reasons, this Court concludes that Plaintiff has failed to state a section 1986 claim upon which relief can be granted.

### d.   Minnesota's Constitution and Statutory Law

Plaintiff contends that Defendants violated provisions of Minnesota's Constitution and various Minnesota statutes. As stated earlier, section 1983 does not provide a remedy for violations of state law. Thus, to the extent that Plaintiff's claims are premised upon section 1983 and alleged violations of state law, Plaintiff has failed to state a claim upon which relief can be granted. This Court concludes that Plaintiff's claims premised upon Minn. Const. Art. 1 §§ 2, 5, 7, and 10, and Minn. Stat. §§ 13D.01, 358.05, and 609.765 represent state causes of action. *See infra* III.8.

### e.   Common Law Torts

Plaintiff has asserted a claim of defamation, which is a common law tort. *Britton v. Koep*, 470 N.W.2d 518, 520 (Minn. 1991) (describing libel and slander as "common law torts"); *see also infra* III.8. Again, section 1983 does not apply to state tort claims. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 2695-96 (1979). Therefore, to the extent that Plaintiff's defamation claim is premised upon section 1983, Plaintiff has failed to state a claim upon which

relief can be granted. Thus, this Court concludes that Plaintiff's defamation claim is solely a state cause of action.

Traditionally false arrest and false imprisonment were state torts. *See Miller v. Compton*, 122 F.3d 1094, 1096 (8th Cir. 1997) (distinguishing between section 1983 claims and state tort claims for false arrest and false imprisonment); *Veneklase v. City of Fargo*, 78 F.3d 1264, 1267 n.2 (8th Cir. 1996) (distinguishing between section 1983 claims and state tort claims for false arrest and false imprisonment). But, by virtue of their elements, they can be pleaded as section 1983 claims. This Court will treat Plaintiff's false arrest and false imprisonment claims as both common law claims and section 1983 claims. *See infra* III.7 (section 1983 false arrest and false imprisonment claims), III.8 (state claims).

### 3. Claims against Defendant Hennepin County

Plaintiff's case caption names "Hennepin County, a political subdivision," as a Defendant in this case. But, Hennepin County is not listed as a Defendant for any individual cause of action in the Second Amended Complaint. Nevertheless, Plaintiff states that he is bringing suit against Defendants "all in their personal and professional capacities." (Second Am. Compl. ¶ 3-4, Sept. 30, 2009.)

"A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Generally, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* [or vicarious liability] theory." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978). But, "[l]ocal governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a

policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978). Furthermore, "[m]unicipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." *Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir.1992) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 121-22, 108 S. Ct. 915, 922-23 (1988)). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee." *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005).

Plaintiff has asserted section 1983 claims against Commissioner Johnson and the security officers. In claims 13 through 22, Plaintiff alleges that particular Defendants were "engaged in the regular course of and within the scope of employment for Hennepin County" and that "Hennepin County is vicariously liable." (Second Am. Compl. claims 13-22.) Plaintiff has not alleged an action by the Hennepin County Board of Commissioners acting as a body. *Contra Owen v. City of Independence*, 445 U.S. 622, 100 S. Ct. 1398 (1980); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981). Furthermore, Plaintiff has not alleged that Commissioner Johnson or the security guards acted in accordance with a policy or custom. Thus, in order for Hennepin County to be liable, Commissioner Johnson or the security officers "must possess[] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482, 106 S. Ct. 1292, 1299 (1986).

Turning to Commissioner Johnson, Plaintiff has not alleged that Commissioner Johnson was a policymaker or decision maker, possessing "final authority" to establish municipal policy with respect to the action ordered. *Id.* at 482-83, 106 S. Ct. at 1299-1300.

> The fact that a particular official—even a policymaking official—
> has discretion in the exercise of particular functions does not,

> without more, give rise to municipal liability based on an exercise
> of that discretion. . . . Authority to make municipal policy may be
> granted directly by a legislative enactment or may be delegated by
> an official who possesses such authority, and of course, whether an
> official had final policymaking authority is a question of state law.

*Id.* at 482-483, 106 S. Ct. at 1299-1300. Plaintiff has not directed this Court to or alleged that there was a policy, resolution, or ordinance under which the State of Minnesota or even the Board of Commissioners delegated authority to Commissioner Johnson to act. *See, e.g.*, Minn. Stat. § 373.02 ("The powers of the county as a body politic and corporate shall only be exercised by the county board or in pursuance of a resolution adopted by the county board."). In fact, Plaintiff pursues a contrary proposition: He contends that the order of speakers was the "established protocol" and Commissioner Johnson departed from that protocol. (Second Am. Compl. claim 1; Pl.'s Response to Def.'s Mot. to Dismiss 3-4, Nov. 24, 2009.)

In the present case, Plaintiff has not alleged that the security officers had final authority to establish municipal policy. In fact pursuant to Plaintiff's own allegations, the security officers were acting at the direction of Commissioner Johnson. (Second Am. Compl. ¶ 17.) Furthermore, Plaintiff has not directed this Court to or alleged that there was a policy, resolution, or ordinance under which the State of Minnesota or even Hennepin County delegated policymaking authority to the security officers.

Therefore, assuming Plaintiff can state a constitutional claim upon which relief can be granted, this Court concludes that Plaintiff has not stated a claim upon which relief can be granted against Hennepin County based upon his claims against Commissioner Johnson or the security officers acted in their official capacities.

### 4. Unreasonable Search and Seizure Claim

Plaintiff alleges Commissioner Johnson subjected Plaintiff to an unreasonable search and seizure, in violation of Plaintiff's Fourth and Fourteenth Amendment rights, when Commissioner Johnson "order[ed] the removal of the Plaintiff from the public hearing and causing the subsequent arrest of the Plaintiff for invalid reasons." (Second Am. Compl. Claim 2, Sept. 30, 2009.) Plaintiff does not allege any facts related to a search. Therefore, this issue is confined to whether Plaintiff can sustain a claim based upon his removal from the hearing and subsequent arrest upon which relief can be granted. For the reasons set forth below, this Court concludes that Plaintiff has not stated a federal claim upon which relief can be granted premised on his constitutional right be free from unreasonable search and seizure.

#### a. Warrantless Arrest

"A warrantless arrest without probable cause violates the Fourth Amendment as applied to state actors by the Fourteenth Amendment." *Stufflebeam v. Harris*, 521 F.3d 884, 886 -887 (8th Cir. 2008) (citation omitted). An individual has probable cause to arrest if "the facts and circumstances within his knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense under state law." *United States v. Rambo*, 789 F.2d 1289, 1293-94 (8th Cir. 1986). Whether there is probable cause to arrest is a question of law where there is no dispute of facts. *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000). A police officer is permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence. *United States v. Watson*, 423 U.S. 411, 418, 96 S. Ct. 820, 825 (1976). Likewise, Minnesota law authorizes a police officer or a private person to arrest another for a public offense, including a

misdemeanor, committed or attempted in the arresting person's presence. Minn. Stat. §§ 629.34, .37.

Based upon Plaintiff's allegations, this Court assumes that the security guards were acting at the direction of Commissioner Johnson. Plaintiff was arrested for disorderly conduct. Minnesota's disorderly conduct statute prohibits someone in a public or private place from disturbing a lawful assembly or meeting, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace. Minn. Stat. § 609.72, subd. 1(2).

This Court concludes that Plaintiff has not alleged a claim upon which relief can be granted because the facts alleged in Plaintiff's Second Amended Complaint and attachments support that there was probable cause to arrest Plaintiff for disorderly conduct. Plaintiff's allegations are premised on the fact that this was a lawfully held public meeting that was being conducted for the purposes of allowing the public to offer testimony regarding the proposed Minnesota Twins' stadium. Plaintiff's allegations include the fact that Commissioner Johnson and the arresting officers witnessed Plaintiff's conduct. Plaintiff's actions prevented Caroline Lawrence from testifying at the hearing. Plaintiff's actions prevented anyone from testifying while he held the podium. Plaintiff interrupted the order of the speakers. Plaintiff was repeatedly told that he would have the opportunity to testify. Plaintiff was also asked to yield the podium to other speakers. Despite these assurances, Plaintiff remained at the podium and spoke in a raised voice. The Board of Commissioners was clearly unable to proceed with the meeting and hear the testimony of others so long as Plaintiff remained at the podium. Based upon these allegations, this Court concludes that Commissioner Johnson had probable cause to believe Plaintiff was

committing the offense of disorderly conduct. Contrary to Plaintiff's belief, it is immaterial that the prosecutor did not pursue charges against Plaintiff. (Pl.'s Reply 5, Nov. 24, 2009.)

This Court notes that Minn. Stat. § 609.72 was recently the subject of an extensive analysis by the Eighth Circuit Court of Appeals. *See Baribeau v. City of Minneapolis*, __ F.3d __, __ 2010 WL 624300, at *5 (8th Cir. Feb. 24, 2010) (interpreting Minn. Stat. § 609.72, subd. 1(3)). The Minnesota Supreme Court previously held that Minn. Stat. § 609.72, subd 1(3), which prohibited "offensive, obscene, or abusive language" tending reasonably to "arouse alarm, anger, or resentment in others," violated the First Amendment when applied without a narrowing construction. *In re Welfare of S.L.J.*, 263 N.W.2d 412, 418-19 (Minn.1978) (quoting Minn. Stat. § 609.72, subd. 1(3)). Thus, the Minnesota Supreme Court held that subdivision 1(3) only prohibits "fights words," or words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 419 (quotation omitted).

In *Baribeau*, individuals, who dressed and acted like zombies during a public event, were arrested for violating Minnesota's disorderly conduct statute. *Baribeau*, 2010 WL 624300, at *8. The Eighth Circuit Court of Appeals concluded that the Minnesota Supreme Court's holding in *S.L.R.* applied to expressive conduct as well as traditional speech. *Id.* at *8. Thus, the court held that the officers lacked probable cause to arrest under Minn. Stat. § 609.72, subd. 1(3), because the record did not support that the zombie conduct in question was anything other than a peaceful, expressive protest against "mindless consumerism." *Baribeau*, 2010 WL 624300, at *8.

This Court concludes that the Eighth Circuit's holding in *Baribeau* is distinguishable from the present case. First, this case concerns section 609.72, subdivision 1(2), whereas *Baribeau* concerned subdivision 1(3). Second, Plaintiff neither challenged the constitutionality of Minn. Stat. § 609.72 nor alleged that he was engaged in expressive conduct. Finally, there was

probable cause to arrest Plaintiff based on the disorderly nature of his conduct. *See Baribeau,* 2010 WL 624300, at *9 (discussing *In re Welfare of T.L.S.*, 713 N.W.2d 877 (Minn. Ct. App. 2006)). Commissioner Johnson could conclude that there was probable cause to believe that Plaintiff's conduct disturbed a lawful assembly with the requisite intent without reference to the content of Plaintiff's message. Thus, this Court concludes that Plaintiff failed to state a claim premised upon the Fourth Amendment as applied through the Fourteenth Amendment upon which relief can be granted.

### b. *Qualified Immunity*

Even if Commissioner Johnson had violated Plaintiff's Fourth Amendment rights, Defendants contend that Commissioner Johnson would still be entitled to qualified immunity. This Court will address this alternative argument even though it is not essential to the decision.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Under this standard, there is "ample room for mistaken judgments," and "all but the plainly incompetent or those who knowingly violate the law" will be held to enjoy qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 537 (1991) (quotation omitted).

"A Rule 12(b)(6) dismissal based on qualified immunity is appropriate when the immunity is established on the face of the complaint." *Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) (quotation omitted). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the

time of the deprivation."[7] *Howard v. Kansas City Police Dept.*, 570 F.3d 984, 988 (8th Cir. 2009).

"'In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles.'" *Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997) (quoting *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir.1989)). "When no controlling precedent holds an ordinance unconstitutional at the time it is applied, the ordinance is presumptively valid." *Fields v. City of Omaha*, 810 F.2d 830, 834 (8th Cir. 1987). When addressing the issue of qualified immunity in the Fourth Amendment context, this Court need not decide whether the conduct was lawful and must also pass the question whether the individuals believed their conduct was lawful. *McIntosh v. Arkansas Republican Party-Frank White Election Committee*, 856 F.2d 1185, 1187 (8th Cir. 1988).

Minn. Stat. § 609.72, subd. 1(2), served as the basis for Plaintiff's arrest. Minn. Stat. § 609.72, subd. 1(2), has never been interpreted to be unconstitutional and Plaintiff does not challenge the statutes' constitutionality. The Eighth Circuit Court of Appeals has affirmed a holding of qualified immunity for officers who performed an arrest under a similar statute. *McIntosh*, 856 F.2d at 1187 (concluding that officers had probable cause where plaintiff intended to disrupt a banquet, refused to heed the officers' warning, and was attracting attention and creating a disturbance by his dress, his agitation, and his raised voice). And courts have affirmed the arrest of individuals under similar facts. *See Felton v. Griffin*, 185 Fed. Appx. 700,

---

[7] This two step procedure in evaluating qualified immunity originated in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), and is no longer mandatory. *Pearson v. Callahan*, ___ U.S. ___, ___, 129 S. Ct. 808, 818 (2009). Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances. *Id.*

702 (9th Cir. 2006) (holding that officers had probable cause to arrest the plaintiff where his conduct, which was disruptive, violated the law prohibiting speech that disturbs or impedes a city council meeting); *Laverdi v. Jenkins Tp.*, 49 Fed. Appx. 362, 364 (3rd Cir. 2002) (affirming a finding that there was no Fourth Amendment violation where the officer had probable cause to eject plaintiff from a public meeting under a statute that prohibits intentionally disturbing or interrupt a lawful meeting); *cf. Habiger v. City of Fargo*, 80 F.3d 289, 296 (8th Cir. 1996) (concluding that officers had arguable probable cause for plaintiff's arrest and were immune from suit where plaintiff's repeated yelling outside of an abortion clinic violated a noise ordinance). Therefore, even if Commissioner Johnson was incorrect in his conclusion that there was probable cause to arrest Plaintiff, this Court concludes that, based upon the allegations and attachments, Commissioner Johnson did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Plaintiff cites *Vergara v. City of Waukegan*, 590 F. Supp.2d 1024 (N.D. Ill. 2008), in support of his contention that Defendants cannot rely on qualified immunity. (Pl.'s Reply 10, Nov. 24, 2009.) This case is neither binding on this Court nor does it cite or relate to the Fourth Amendment.

### 5. Free Speech Claims

In four counts (i.e., causes of action 1, 13, 15, and 20), Plaintiff alleges Defendants Commissioner Randy Johnson, Security Supervisor Thomas Billings, Security Officer Robert Estes, and Security Officer James Henderson each violated his right to free speech. For the reasons set forth below, this Court concludes that Plaintiff has not asserted a First Amendment claim upon which relief can be granted.

### a. First Amendment Jurisprudence

The Free Speech Clause of the First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S. Ct. 2286, 2290 (1972). It is "common ground" that the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Soceity for Krishna Consciousness*, 452 U.S. 640, 647, 101 S. Ct. 2559, 2564 (1981); *see, e.g., Kirkland v. Luken*, 536 F. Supp.2d 857, 875-76 (S.D. Ohio 2008) (stating there was no First Amendment violation where speaker's microphone was turned off and speaker was removed from public hearing for using inappropriate language and shouting); *Scroggins v. City of Topeka*, 2 F. Supp.2d 1362, 1374-75 (D. Kansas 1998) (holding there was no First Amendment violation when speaker was removed from a public hearing after he verbally attacked the hearing chair).

The initial step in this analysis is to consider the character of location at which the claim arose. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954 (1983). "[T]he Supreme Court described three categories of public fora: (1) the traditional public forum; (2) the designated public forum; and (3) the nonpublic forum." *Families Achieving Independence and Respect v. Nebraska Dept. of Social Services*, 111 F.3d 1408, 1418 (8th Cir. 1997).

"A designated public forum is a nonpublic forum the government intentionally opens to expressive activity for a limited purpose such as use by certain groups or use for discussion of certain subjects." *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006). "Courts have held that a

designated public forum exists when a governmental body affords the public an opportunity to address the body at its meeting." *Piscottano v. Town of Somers*, 396 F. Supp.2d 187, 201 (D. Conn. 2005) (citing numerous federal cases in which courts have held that government meetings at which the public can speak are designated public forums).

The courts further distinguish between limited designated public forums and unlimited designated public forums. *Bowman*, 444 F.3d at 976.

> [A] limited public forum is a subset of the designated public forum that arises where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects. . . . An "unlimited" designated public forum is a forum designated for expressive conduct by the government but not limited to a particular type of speech or speaker.

*Id.* at 976 (quotations omitted). A public hearing designated for the discussion of a discrete issue constitutes a limited designated public forum. In an unlimited designated public forum and in a limited designated public forum being used for its designated purpose,[8] "the government may enforce a content-neutral time, place, and manner restriction only if the restriction is necessary to serve a significant government interest and is narrowly drawn to achieve that interest." *Id.* at 976; *see Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800, 105 S. Ct. 3439, 3448 (1985) ("[W]hen the Government has intentionally designated a place or means of communication as a public forum[,] speakers cannot be excluded without a compelling governmental interest."). In addition, a reasonable time, place, and manner restriction must "leave open ample alternative channels for communication of the information." *Van Bergen v. State of Minn.*, 59 F.3d 1541, 1553 (8th Cir. 1995) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069 (1984)). All of these issues are

---

[8] Courts have concluded that in a limited public forum the government does not violate the First Amendment when it restricts public speakers to the limited topic. *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990).

ultimately questions of law, although they encompass subsidiary fact questions. *McTernan v. City Of York, PA*, 564 F.3d 636, 646 (3rd Cir. 2009).

Plaintiff contends that his right to speak at the hearing was infringed in two ways. First, Plaintiff alleges that there was an "established protocol" and Plaintiff "was shown that he was numerically listed as the eighth pre-registered person to testify." (Second Am. Compl. ¶¶ 29, 31.) Despite these facts, Plaintiff was not called as the eighth speaker. Plaintiff contends that Defendant Commissioner Johnson "unreasonably denied" Plaintiff the right to speak "because of the content of Plaintiff's intended remarks or other improper reasons." (Second Am. Compl. ¶ 35.) Second, Plaintiff contends that Commissioner Johnson and the security officers denied his right to speak by removing Plaintiff from the hearing. (*Id.* at ¶¶ 83, 95, 130.)

### b. Claim 1: Speaking Order Claim

This Court reads Plaintiff's claim against Commissioner Johnson to be that Commissioner Johnson violated Plaintiff's right to free speech when Commissioner Johnson did not follow the "established protocol" and did not permit Plaintiff to be the eighth speaker. (Second Am. Compl. ¶¶ 28-38.) Plaintiff alleges that he was denied the right to address the public body because of the content of his "intended remarks or other improper reasons." (*Id.* at ¶ 35.)

This Court assumes that an "established protocol" existed and was not followed. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 157 n.5, 98 S. Ct. 1729, 1737 n.5 (1978) (stating the involvement of a state official provides state action whether or not the actions were lawful). But, for the purposes of First Amendment analysis, this Court is not concerned with the protocol that Plaintiff anticipated.[9] Even assuming that Plaintiff had the right to speak, the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any

---

[9] This case does not concern prior restraints or request for injunctive relief.

manner that may be desired." *Heffron*, 452 U.S. at 647, 101 S. Ct. at 2564. To state a claim upon which relief can be granted Plaintiff must state a claim that the protocol allegedly *employed* could support a claim that Commissioner Johnson violated Plaintiff's First Amendment rights.

Just as the Eighth Circuit Court of Appeals considered an ad hoc time limit for speakers at a designated public forum, *Wright v. Anthony*, 733 F.2d 575 (8th Cir. 1984), so too can this Court consider an ad hoc protocol for selecting the order of speakers. And this Court concludes that the ad hoc protocol allegedly employed was a content-neutral, time, place, and manner restriction, necessary to serve a significant government interest and narrowly drawn to that interest.

The policy as alleged in Plaintiff's Second Amended Complaint and in his attachments was a "for and against" order determined by Commissioner Johnson. This Court concludes that this policy is content-neutral. Although content was considered for the purposes of organizing "for and against" pattern, both viewpoints had the opportunity to be heard.[10]

The policy allegedly employed serves a significant government interest in administering orderly hearings. *See Lowery v. Jefferson County Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009) (holding that a policy putting limitations on speakers serves a significant government interest because "[u]nstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard"); *Timmon v. Wood*, 316 Fed. Appx. 364, 366 (6th Cir. 2007) (stating that there is a legitimate government interest in ensuring city council meetings are efficiently conducted). Plaintiff contends that his interest in addressing

---

[10] Forty-five people testified at the hearing. Plaintiff attached a copy of government meeting sign-in sheet listing the preregistered speakers and the meeting minutes that include the list of speakers. There is no apparent correlation between the speaker's order on the sign-in sheet and the order in which speakers testified at the hearing. Plaintiff was the only individual on the sign-in sheet who did not speak (or did not have the opportunity to speak).

a matter of public concern outweighs any government interest.[11] (Second Am. Compl. ¶ 37.) Plaintiff's contention is without merit because his interest is subsumed within his First Amendment rights. To wit, it is only because he had a right to speak on a matter of public concern that this Court must engage in the present analysis.

Furthermore, the policy allegedly employed was narrowly drawn to the interest of administering an orderly hearing because those who signed up for the hearing had the opportunity to offer testimony. *See supra* n.10. The policy also balances the rights of all of the speakers. And the policy offers ample alternatives to communication because it promised that the speaker will have an opportunity to be heard at some point.[12]

"There is no war between the Constitution and common sense." *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S. Ct. 1684, 1693 (1961). And common sense dictates that, when a group of people want to speak at a public meeting, one person will always speak first and one person will always speak last, and it is not for the courts to decide whether the first word or the last word was more advantageous at any one meeting.[13] Thus, this Court concludes that Plaintiff has not stated a claim upon which relief can be granted premised upon the order in which individuals testified at the public hearing.

---

[11] Plaintiff cites *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684 (1983) and *Cabrol v. Town of Youngsville*, 106 F.3d 101 (5th Cir. 1997). Both of these cases concerned government employees. The standard of review for employee speech requires a balancing between the employee's interest in commenting upon matters of public concern and the government's interests as an employer. *Connick*, 461 U.S. at 142, 103 S. Ct. at 1687. This analysis is inapplicable here because Plaintiff was not a government employee.

[12] In addition, there were to be two other hearings at which individuals could speak.

[13] This Court notes that common sense also dictates this entire lawsuit could have been avoided had Plaintiff been permitted to offer his two minutes of testimony or if Plaintiff had been definitively told when he would be permitted to speak.

### c. Claims 1, 13, 15, and 20: Removal from the Hearing

Plaintiff alleges that he was "at the podium seeking procedural clarification" when Commissioner Johnson signaled for his removal. (Second Am. Compl. Claim 1.) Thereafter, Security Supervisor Thomas Billings, Security Officer Robert Estes, and Security Officer James Henderson removed him from the hearing, and Plaintiff was denied the opportunity to testify. (*Id.* at Claims 13, 15, 20.) Plaintiff alleges that his right to speak was denied because of the content of his "intended remarks or other improper reasons." (Second Am. Compl. Claim 1.)

Plaintiff's allegations and attachments support that Minn. Stat. § 609.72, subd. 1(2), was the basis for Plaintiff's arrest. Plaintiff has not challenged the constitutionality of Minn. Stat. § 609.72, subd. 1(2). *See Habiger v. City of Fargo*, 80 F.3d 289, 296 (8th Cir.1996) (distinguishing a claimed violation of the First Amendment from a challenge to the statute under which the plaintiff was arrested). As this Court concluded, based upon Plaintiff's pleadings, Plaintiff's arrest was supported by probable cause and even if Plaintiff's arrest was not supported by probable cause, it was reasonable for Commissioner Johnson to believe that he was not violating Plaintiff's constitutional rights. This same conclusion applies here.

This court finds analogous support for this conclusion in the Eighth Circuit Court of Appeal's decision in *Smithson v. Aldrich*, 235 F.3d 1058 (8th Cir. 2000). On the night the plaintiff in *Smithson* was arrested, officers arrived at his establishment and instructed him to cease an outdoor concert that had exceeded its permitted time limit. *Id.* at 1058. The plaintiff addressed the crowd concerning the officer's instructions, which caused the crowd to react in a "hostile manner." *Id.* Plaintiff was subsequently arrested for disorderly conduct and violating a city sound ordinance. *Id.* Plaintiff subsequently brought section 1983 claims for violations of his First and Fourth Amendment rights. *Id.* at 1060. The Eighth Circuit first concluded that

defendant-officers had arguable probable cause to arrest the plaintiff for violating the noise ordinance, and therefore, they were entitled to qualified immunity for the Fourth Amendment claim. *Id.* at 1062. As to the First Amendment claim, the plaintiff argued that his arrest was pretextual; he claimed that the officer-defendants arrested him because they disagreed with his statements. *Id.* at 1063. Relying upon undisputed facts, the Eighth Circuit expressed its doubts as to whether the plaintiff could prove pretext, but concluded that, "even if this pretextual argument were proven at trial, it would not nullify the finding of probable cause to believe that [the plaintiff] was violating the sound ordinance, nor would it prevent the application of the qualified immunity defense." *Id.* at 1063; *see also Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold that the officers had arguable probable cause to arrest [the plaintiff] for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

Likewise, even if Plaintiff proved at trial that his removal from the hearing was pretextual, it would not nullify the finding of probable cause to believe that Plaintiff violated Minnesota's disorderly conduct statute nor would it prevent the application of the qualified immunity defense. Thus, courts have consistently rejected First Amendment claims against government officials who prevent individuals from further disturbing public meetings. *See Jones v. Heyman*, 888 F.2d 1328, 1329-1334 (11th Cir. 1989) (holding that a "mayor acted reasonably in regulating the time, place and manner of" the plaintiff's speech, where the mayor ordered the plaintiff to be escorted from the meeting where the plaintiff refused to speak on topic and was antagonistic); *supra* III.4.b (citing numerous cases in which comparable government action has been affirmed). *Cf. Action v. Gannon*, 450 F.2d 1227, 1233 (8th Cir. 1971) (concluding the defendants "do not have a right to enter [a] cathedral and disrupt the church services of the

plaintiffs"). *Contra Iacobucci v. Boulter*, 193 F.3d 14, 25 (1st Cir. 1999) (affirming jury verdict where there was no evidence that the plaintiff "interrupted or disturbed" the Commission's meeting from which he was removed).

The only case that Plaintiff cites in opposition is *Vergara*, 590 F. Supp.2d 1024. As stated earlier *Vergara* is neither binding on this Court nor instructive in the present case. In *Vergara*, one plaintiff's section 1983 claim arose out an incident in which the plaintiff was denied the opportunity to speak at a city government meeting "based on his conduct at . . . [an earlier] rally." *Id.* at 1038. Specifically, he attempted to avail himself of the opportunity to address a city government meeting, and was told that he could not do so until he apologized to a police officer he allegedly accosted at an earlier rally. *Id.* This claim is clearly distinguishable because no impermissible conditions were placed upon Plaintiff. The only other claim in *Vergara* that relates to access to a government meeting is a group of protesters' claim that they were denied access from even entering the meeting. *Id.* at 1041-44. While the *Vergara* court concluded that there was a genuine issue of material fact as to this issue, this conclusion has no persuasive value for the present case. *Id.* at 1044.

Thus, for the reasons set forth above, this Court concludes that Plaintiff has failed to state a claim upon which relief can be granted premised upon the First Amendment.

### 6. Cruel and Unusual Punishment Claims

In four counts, Plaintiff alleges that Defendants Commissioner Johnson, Elmore, Collumbein, and Mara "violated Plaintiff's protection from the infliction of cruel and unusual punishment, protected by the Eighth Amendment, by . . . caus[ing] Plaintiff to be injured as he was dragged from the meeting room." (Second Am. Compl. Claims 3, 17, 18, 22.) Plaintiff

further contends that each Defendant had "full knowledge of the injury to Plaintiff's shoulder and inflicted cruel and unusual punishment to Plaintiff, a senior citizen." (*Id.*)

The Eighth Amendment prohibits cruel and unusual punishment and is applicable only after a person has been convicted of a crime. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40, 97 S.Ct. 1401, 1412 n.40 (1977). Thus, this Court concludes that Plaintiff has not asserted an Eighth Amendment claim upon which relief can be granted under section 1983.

### 7. False Arrest and Imprisonment Claims

Claims for false arrest and false imprisonment are actionable under 42 U.S.C. § 1983. *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001. The Minnesota Supreme Court describes these torts as follows:

> The action for the tort of false imprisonment or false arrest protects the personal interest in freedom from restraint of movement. The restraint may be imposed by the assertion of legal authority, and if an arrest is made without proper legal authority, it is a false arrest, and so false imprisonment.

*Lundeen v. Renteria*, 302 Minn. 142, 146, 224 N.W.2d 132, 135 (Minn.1974) (stating "the essential elements of plaintiff's claim for relief are (1) an arrest performed by defendant, and (2) the unlawfulness of such arrest"). As stated earlier, an arrest constitutes an unconstitutional seizure when it is made in the absence of probable cause. Thus, for the purposes of section 1983, a claim of false arrest fails where the officer had probable cause to arrest. *Kurtz,* 245 F.3d at 758.

As this Court previously concluded, Defendants had probable cause to arrest Plaintiff. Even if they lacked probable cause, they enjoy qualified immunity. Therefore, this Court concludes that Plaintiff has failed to state false arrest and false imprisonment claims upon which relief can be granted under section 1983.

**8. Remaining State Law Claims**

This Court has federal question jurisdiction over the claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1986, which allege violations of Plaintiff's rights under the United States Constitution. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims arising under of the Minnesota Constitution, Minnesota statutes, and state common law. 28 U.S.C. § 1367. This Court has concluded that Plaintiff has alleged no federal claims upon which relief can be granted. Pursuant to this conclusion, if Plaintiff's federal question claims are dismissed, then this Court no longer has jurisdiction over Plaintiff's state law claims. In these circumstances it is appropriate to remand Plaintiff's state law claims to the Hennepin County District Court.

## IV.  RECOMMENDATION

Based upon the record, memoranda, and oral arguments of Plaintiff and counsel, **IT IS HEREBY RECOMMENDED** that:

1.  Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 37] be **GRANTED IN PART**; to the extent that claims 1 through 22 of Plaintiff's Second Amended Complaint state federal claims, those claims be **DISMISSED WITHOUT PREJUDICE**.

2.  Defendants' Motion to Dismiss Second Amended Complaint [Docket No. 37] be **DENIED IN PART**; to the extent that claims 1 through 22 of Plaintiff's Second Amended Complaint state claims premised upon state law, those claims be **REMANDED** to the District Court of State of Minnesota.

Dated:_____3/9/10_____

_____s/ Arthur J. Boylan_____
Magistrate Judge Arthur J. Boylan
United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before      March 25, 2010      .